**LOCAL 238 INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, CHAUF-FEURS, WAREHOUSEMEN & HELP-ERS, Plaintiff–Appellant,**

v.

**CARGILL, INC., Defendant–Appellee.**

**No. 95–1295.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1995.

Decided Oct. 4, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 9, 1995.*

Dennis E. Francis, Des Moines, IA, argued, for appellant.

Alex V. Barbour, Chicago, IL, argued, for appellee.

Before LOKEN, Circuit Judge, LAY, Senior Circuit Judge, and VAN SICKLE,** Senior District Judge.

PER CURIAM.

James Kopish was employed by Cargill, Inc. as an extraction operator at a soybean processing plant in Cedar Rapids, Iowa. He was discharged on November 27, 1992, for refusal to submit to a drug and alcohol test. Under the collective bargaining agreement, the Union grieved and ultimately submitted his termination to arbitration.

In its post hearing arbitration brief, the Union framed the issue as "a basic just cause test," and submitted "if there was not just

---

* Judge Beam would grant the suggestion for rehearing en banc.

** The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

cause for the termination, what is an appropriate remedy?" (J.A. at 11.) Cargill's post hearing brief acknowledged that the issues included "whether the grievant ... was discharged for just cause and, if not, what is the remedy." *Id.* at 25. Similarly, the arbitrator's summary of the issues included: "was [Grievant] discharged for sufficient just cause? If the Grievant was discharged for less than sufficient just cause, what shall be the appropriate remedy?" *Id.* at 61.

At the arbitration proceeding, Kopish and the Union disputed whether Cargill had a proper basis for requesting the drug and alcohol test. The arbitrator found that Kopish consumed alcohol on the job and was dishonest during the subsequent investigation, that he "knowingly and willfully" refused to take the test, that Cargill's drug and alcohol policy was incorporated into the collective bargaining agreement, and that the policy provides that if an employee refuses testing, he will be considered in violation of the policy and will be terminated. However, in view of Kopish's long service, favorable reputation with Cargill, and demeanor at the arbitration hearing, the arbitrator concluded that sufficient cause did not exist to warrant Kopish's discharge. Instead, the award directed that Kopish be afforded a singular opportunity to accept a significant disciplinary suspension as part of a "last chance" offer of re-employment in-lieu of discharge.[1] The arbitrator stated that his remedy "shall *not* be characterized as an attempt by the Arbitrator to 'split the baby', but as a reasonable effort to acknowledge the gravity of the Grievant's behavior, the appropriateness and applicability of [Cargill's] policy, and the extended duration of [Kopish's] employment and functioning in a responsible Lead classification." *Id.* at 76–77.

The Union brought this action in federal district court to enforce the award, pursuant to 29 U.S.C. § 185(a). Cargill urged before the district court, as it does here, that the arbitrator exceeded his authority and that his decision fails to draw its essence from the bargaining agreement and was in direct contravention of the express terms of the agreement. The district court agreed. The court acknowledged the limited scope of judicial review of arbitration awards:

> The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on error of fact or on misinterpretation of the contract.... As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate.

*Local 238, Int'l Bhd. of Teamsters v. Cargill, Inc.*, No. C 94–4, at 2–3 (N.D.Iowa, filed Dec. 23, 1994) (quoting *International Woodworkers v. Weyerhaeuser Co.*, 7 F.3d 133, 135 (8th Cir.1993) (citations and quotations omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1995)). However, it vacated the arbitration award because "the arbitrator ignored the plain mandatory language of the collective bargaining agreement" because that agreement "expressly and unambiguously provides that an employee *will* be terminated" for refusing a proper request to take a drug or alcohol test.

Cargill's formal drug and alcohol policy is critical to this dispute. That policy provides in relevant part:

> Testing for drugs and alcohol may be conducted in the following instances:
>
> > *Reasonable Suspicion Testing.* Where there is a reasonable suspicion that an employee is under the influence of a mood-altering substance ... while working, or on Company premises, the employee may be asked by supervisory personnel to report for a drug and alcohol test on Company time and at Company expense.
>
> > \* \* \* \* \* \*

---

1. The last chance agreement specifically provided that such was in-lieu of discharge, and if accepted, would modify the discharge to a ninety (90) day unpaid suspension, with Grievant being placed on unpaid leave from the expiration of the suspension to the date of his reinstatement. Further, upon reinstatement, Kopish was to begin a twenty-four (24) month probationary period during which violation of any significant rule would constitute the basis for his immediate discharge. *Id.* at 78.

Employees to be tested will be required to sign a consent form authorizing the test and the release of the results to Cargill.... However, if the testing is refused, the employee will be considered in violation of the policy and *will be terminated.*

*Id.* at 106–07 (emphasis added). If the collective bargaining agreement expressly provided that an employee who refuses to take an alcohol test "will be terminated," we would agree with the district court's decision that the arbitrator's award "ignored the plain mandatory language" of that agreement, as the court held on similar facts in *Warrior & Gulf Nav. Co. v. United Steelworkers*, 996 F.2d 279 (11th Cir.1993), *rehearing en banc denied*, 12 F.3d 221, *cert. denied*, —— U.S. ——, 114 S.Ct. 1834, 128 L.Ed.2d 462 (1994). However, the drug and alcohol policy was not written verbatim into the collective bargaining agreement. Rather, the policy is incorporated by reference in Article XVI of the agreement:

> The Drug Testing Policy in effect during the term of this agreement shall be the Cargill policy. The testing procedure shall be invoked as per the policy.
>
> \*   \*   \*   \*   \*   \*
>
> It is agreed that disputes over this policy ... shall enter the grievance procedure at step 2.

*Id.* at 92. In addition, Article XXIV of the agreement provides that "The Company shall not discharge any employee without just cause...." *Id.* at 96. And Article XXV establishes a grievance/arbitration procedure for "any controversy arising out of the interpretation of, or adherence to, the terms or provisions of this Agreement." *Id.* at 97.

Under the arbitrator's interpretation of these provisions, when the parties agreed to commit drug and alcohol policy disputes to the normal grievance/arbitration process, that included such remedial discretion as an arbitrator customarily has in reviewing terminations for just cause. Applying the appropriate standard of judicial review, we uphold that interpretation of the collective bargaining agreement.

■ An arbitrator's award must be enforced "as long as the arbitrator is even arguably construing or applying the contract,". and not simply enforcing his own notions of industrial justice. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Cargill argues that when the arbitrator interpreted the relationship between the drug and alcohol policy and the requirement of "just cause" for termination, he improperly disregarded Article XXV, Section 3, of the agreement, which states that the arbitrator "shall not amend, alter or change the Agreement in any manner or form." (J.A. at 97.) However, there is an inherent tension or ambiguity between the portion of the drug and alcohol policy which provides that if "testing is refused, the employee ... will be terminated," and the provision in the collective bargaining agreement submitting drug and alcohol policy disputes to grievance and arbitration. Harmonizing these discordant provisions was clearly a matter for the arbitrator and was well within his authority. *See Hamilton v. United States Postal Serv.*, 746 F.2d 1325, 1327 (8th Cir.1984); *Kewanee Mach. Div., Chromalloy Am. Corp. v. Local Union No. 21, Int'l Bhd. of Teamsters*, 593 F.2d 314, 317 (8th Cir.1979).

Moreover, the arbitrator was concerned in this case with a question of remedy—whether there was "sufficient just cause" to warrant termination rather than a lay-off without pay and the offer of a last clear chance agreement. "[T]hough the arbitrator's decision must draw its essence from the agreement, he 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.'*" *Misco*, 484 U.S. at 41, 108 S.Ct. at 372 (emphasis in original, quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ Finally, it is highly significant that both parties explicitly asked the arbitrator to find whether Kopish was discharged for sufficient just cause and to determine the appropriate remedy if he was not. When two parties submit an issue to arbitration, it con-

fers authority upon the arbitrator to decide *that* issue. *See First Options, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). "Once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority." *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 561 (8th Cir.1990, *cert. denied,* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991). The limits of an arbitrator's authority are defined in part by the terms of the parties' own submission. *See AT & T Technologies, Inc. v. Communications Workers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Thus, Cargill cannot now argue that the arbitrator had no authority to decide an issue it agreed to submit. *See Franklin Elec. Co. v. International Union, UAW,* 886 F.2d 188, 192 (8th Cir.1989).

Eighth Circuit cases upon which Cargill relies are not to the contrary. In *See Coca-Cola Bottling Co. v. Teamsters Local Union No. 688,* 959 F.2d 1438 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), the contract mandated an exclusive remedy to which the arbitrator did not adhere. In *St. Louis Theatrical Co. v. St. Louis Theatrical Bhd., Local 6,* 715 F.2d 405 (8th Cir.1983), under the collective bargaining agreement, the arbitrator had no authority to evaluate the Company's discipline. Similarly, in *Riceland Foods, Inc. v. United Bhd. of Carpenters, Local 2381,* 737 F.2d 758 (8th Cir.1984), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2327, 85 L.Ed.2d 845 (1985), the express language of the contract prevented the arbitrator from evaluating the type of discipline selected. Here, the collective bargaining agreement placed no remedial restrictions on the arbitrator's authority, and the arbitrator *was* expressly invited by both parties to evaluate the propriety of the discipline selected by Cargill.

Whether an arbitrator misconstrued a contract does not open an award to judicial review. *See Enterprise Wheel,* 363 U.S. at 599, 80 S.Ct. at 1362. We cannot interfere with the arbitrator's award "unless it can be said with positive assurance that the contract is not susceptible of the arbitrator's interpretation." *Kewanee Mach.,* 593 F.2d at 318 (quotation omitted). Such is not the case here. Accordingly, the judgment of the district court is reversed and the case is remanded with directions to reinstate and enforce the arbitrator's award.